IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 28, 2015 Session

## SHELBY COUNTY v. JAMES CREWS, ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT00436904     Karen R. Williams, Judge**

_____

**No. W2014-02053-COA-R3-CV – Filed December 14, 2015**
_____

This is the second appeal in this condemnation proceeding in which Shelby County ("the County") sought to condemn a parcel of real property owned by the Appellees. The original appeal involved our review of the trial court's decision to allow the County to nonsuit its case after a consent order had already been entered granting it ownership in fee simple. We concluded that the entry of voluntary dismissal was inappropriate where (1) the trial court had already granted the County ownership and (2) only the issue of compensation was left to be decided. We accordingly remanded the case for a determination as to the amount of compensation to be paid. Following the remand, the County moved for summary judgment asserting that it was entitled to relief under an adverse possession theory and Tennessee Code Annotated section 28-2-110. The trial court denied this motion. The case was later set for trial to determine the amount of compensation owed as a result of the condemnation. In response to statements made by the County's counsel during trial concerning the County's need for the property, the trial court sustained an oral motion made by the Appellees' counsel to dismiss the condemnation proceeding. A formal order of dismissal was entered in July 2012, pursuant to which the trial court transferred all title to the property from the County back to the Appellees. In the same order, the trial court reserved several issues for later ruling, including the assessment of damages, costs, and credits. After orders were eventually entered resolving these reserved issues, the County filed a timely notice of appeal. Having considered the issues raised on appeal, we reverse the trial court's dismissal of the condemnation action, transfer title to the property at issue back to the County, and remand for further proceedings consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which BRANDON O. GIBSON, and KENNY ARMSTRONG, JJ., joined.

Bruce D. Brooke and Ross Dyer, Memphis, Tennessee, for the appellant, Shelby County, Tennessee.

Irma Merrill Stratton, Memphis, Tennessee, for the appellees, James M. Crews, Jr., Margaret Crews Warren, John T. Crews, L. Dow Crews, Ann Hooks Johnson, and Ormond Crews, III.

**OPINION**

**Background and Procedural History**

This case involves competing claims over a small parcel of real property located near Shelby Farms in Shelby County, Tennessee. The property was formerly the site of an old railroad depot, and the County had possession of the property for many years preceding the commencement of this litigation. The County used the land as a parking lot for the nearby Shelby County Penal Farm. The Appellees' interest in the property is traceable to a reversionary clause in a deed executed by their ancestor, L.D. Mullins, to the Tennessee Midland Railway Company in 1890. As we explained in our prior Opinion dealing with the first appeal in this case, there is no dispute that the Appellees owned the property at the time the County initiated the condemnation litigation. *Shelby Cnty. v. Crews*, 315 S.W.3d 477, 479 (Tenn. Ct. App. 2009).

On July 30, 2004, the County filed a petition in Shelby County Circuit Court for condemnation of the property at issue[1] and tendered $39,500 to the court as the amount of compensation to which the Appellees were entitled for the taking. Although the Appellees did not dispute the County's legal right to acquire the property, they did dispute the amount of compensation that they should receive. On December 14, 2004, the trial court entered a consent order granting the County ownership of the property in fee simple. In pertinent part, the consent order stated as follows: "[T]he Petitioner in this cause has the right to condemn the subject property . . . and it is entitled to all property rights and ownership in fee simple . . . by the exercise of the power of eminent domain[.]" A trial was later scheduled to litigate the amount of compensation owed to the Appellees.

Prior to the scheduled trial, on September 11, 2007, the County filed a notice of voluntary nonsuit. The Appellees promptly filed an objection to the nonsuit and argued that the County could not dismiss its petition because it took possession of the property as a result of the December 2004 consent order. The County asserted that it had taken possession of the

---

[1] We note that when the condemnation petition was originally filed, the County also sought to condemn another larger parcel of real property. This other parcel is not at issue in this appeal, as the County later limited its condemnation action to only the parcel where the railroad depot once stood.

property long before the entry of the consent order. It asserted rights to the property under an adverse possession theory and argued that the Appellees were barred from asserting any interest in the property pursuant to Tennessee Code Annotated section 28-2-110.[2] The trial court ultimately entered an order permitting the County to take a nonsuit.

Upon an appeal from the dismissal, we reviewed the matter and concluded that the trial court's decision to permit a nonsuit was in error. In reaching this conclusion, we relied on the Tennessee Supreme Court's decision in *Anderson v. Smith*, 521 S.W.2d 787 (Tenn. 1975). The *Anderson* decision directly addressed the question of when a condemner could take a voluntary nonsuit, stating as follows:

> "[T]he condemner has the right to take a nonsuit at any time prior to the case being submitted to the trier of fact for decision, unless the condemner has taken possession of the property under court order issued under circumstances leaving nothing to be decided by the court except the compensation to be paid the owner for the land taken."

*Id.* at 791. By citing to *Anderson* in the first appeal of this case, we held that the County was precluded from nonsuiting its case where the trial court had already "granted it ownership and the legal right of possession, leaving only the issue of compensation to be decided." *Crews*, 315 S.W.3d at 482. Accordingly, we reversed the dismissal of the condemnation petition and remanded the case for further proceedings. *Id.*

On December 22, 2010, after we had remanded the case to the trial court, the County filed a "Second Amended Petition for Condemnation & Amended Complaint." This complaint attempted to expand the scope of relief sought under the original complaint. In addition to seeking condemnation of the parcel at issue, the County alternatively requested that it be declared the fee simple owner of the subject parcel. The County contended that it was entitled to declaratory relief on a number of fronts. First, it alleged that it was the owner of the property as a result of adverse possession. Second, the County asserted that Appellees

---

[2] The text of Tennessee Code Annotated section 28-2-110 provides as follows:

> Any person having any claim to real estate or land of any kind, or to any legal or equitable interest therein, the same having been subject to assessment for state and county taxes, who and those through whom such person claims have failed to have the same assessed and to pay any state and county taxes thereon for a period of more than twenty (20) years, shall be forever barred from bringing any action in law or in equity to recover the same, or to recover any rents or profits therefrom in any of the courts of this state.

Tenn. Code Ann. § 28-2-110(a) (2000).

were barred from claiming title to the property pursuant to Tennessee Code Annotated section 28-2-110. These claims had previously been the subject of the County's arguments when the County attempted to nonsuit the case prior to the first appeal.

The Appellees filed an answer to the second amended petition on January 18, 2011. Therein, the Appellees contended that the only issue remaining for adjudication was the amount of fair compensation owed as a result of the taking of the property. Consequently, the Appellees asserted that the County's claims related to "adverse possession, Tenn. Code Ann. § 28-2-110, and/or any other issue not relating to compensation should be stricken."

On June 7, 2011, the County moved for summary judgment on the alternative bases for relief that it had pled in its second amended petition. In addition to asserting that the Appellees had forfeited any right to claim an interest in the property pursuant to Tennessee Code Annotated section 28-2-110, the County contended that it should be declared the owner of the property as a result of its adverse possession. The County's motion, which was heard on July 8, 2011, was denied by the trial court in an order entered on July 15, 2011. A filed transcript of the trial judge's oral summary judgment ruling indicates that the trial judge considered the issues raised by the motion to be "moot." In relevant part, the trial judge explained:

> [A]ll of the issues raised . . . are in fact moot, and they were rendered moot first by the filing initially of this petition by condemnation and then by the entry of the order in 2004 that confirmed the taking. The only remaining issue for trial is the fair market value of the taking. We will proceed to trial on that issue alone.

Prior to trial, the case was transferred from Division II to Division III of Circuit Court. Trial was later scheduled to begin on April 2, 2012.

During the course of the trial proceedings, counsel for the County made a number of remarks pertaining to the County's "need," or lack thereof, for the property/condemnation proceedings. On April 5, 2012, for example, the following exchange took place between the County's counsel and the trial judge:

> [Counsel for the County]: To get the injunction the county did not need condemnation to take the depo[t] property. But it was referenced in the file in August 2004.
>
> The Court: Why did the county not need the condemnation order?

4

[Counsel for the County]: Because the county already had the property, Your Honor.

The Court: And how did the county get it?

[Counsel for the County]: By using it. It had been using it for years and years assuming that it was their's. No one ever came forward claiming any interest in the property.

Moreover, on the morning of April 9, 2012, the County's counsel remarked as follows:

The surprise in the case was that it was set in 2007 and we suddenly, three, four weeks before trial get Mr. Powell's appraisal and these opinions of $200,000, approximately, of value of the property . . . that was the surprise in the case, your Honor. At which point Judge Russell allowed a nonsuit of the case, which the county took a nonsuit because we don't need this property. We don't need this property.

Shortly after the County's counsel made these remarks, the Appellees' counsel made an oral motion to dismiss the case. In pertinent part, the Appellees' counsel stated:

If your Honor please, the family would like to ask to dismiss the case because the county does not need it for public use. Eminent domain is only available to a government that needs the property for public use.

* * * *

The county should deed the land back to the family; and the county, for forcing this family to go through this litigation, should pay the attorney's fees this family has had to pay to try to get the county to pay it for its land; dismiss the eminent domain proceeding, deed the property back to the Crews family.

The trial court later ruled that the County could not acquire the property by condemnation and remarked that title to the property should be restored to the Appellees. An order memorializing this ruling was entered on July 12, 2012. The order concluded that the County's case should be dismissed and that all "ownership right, title and interest" in the property should be transferred back to the Appellees. In addition to dismissing the County's case, the order reserved several issues for future consideration, including the assessment of

damages under Tennessee Code Annotated section 29-17-912.[3]  After the trial court held subsequent proceedings to adjudicate the issues reserved under the order of dismissal, it entered a final judgment on September 18, 2014.  The County then timely appealed to this Court.

## Issues Presented

In its brief, the County raises three primary issues for our consideration.  Condensed and restated, these issues are as follows:

(1)     Whether the trial court erred in sustaining the Appellees' motion to dismiss and divesting title to the property from the County to the Appellees.

(2)     Whether the trial court erred in denying the County's motion for summary judgment predicated upon application of adverse possession and Tennessee Code Annotated section 28-2-110.

(3)     Whether the trial court erred in its assessment of damages under Tennessee Code Annotated section 29-17-912 and in its application of credits.

As a separate issue in their appellate brief, the Appellees state that they are entitled to recover attorney's fees and expenses associated with the present appeal *and* the prior appeal that reversed the trial court's allowance of the County's nonsuit.

## Discussion

### *Dismissal of the County's Case*

We begin our discussion by reviewing the threshold question in this appeal—was the trial court's dismissal of the County's case in error?  Answering this question is of central importance, as ownership of the property at issue directly hinges on it.  If the dismissal was warranted, as found by the trial court, then title to the property rests with the Appellees.  Of course, if dismissal was improper, as the County contends, ownership of the property should be restored to the County.  For the reasons that follow, we conclude that dismissal of the

---

[3] Tennessee Code Annotated section 29-17-912 provides that the court may award the owner of the property attorney fees, appraisal and engineering fees, and such other expenses incurred because of the condemnation proceedings if (1) the final judgment prevents the acquiring party from condemning the property or (2) the acquiring party abandons the condemnation proceeding.  Tenn. Code Ann. § 29-17-912(b) (2012).

County's condemnation case was in error and that title to the property should be transferred back to the County.

As previously discussed, the petition for condemnation was filed in July 2004. Less than five months later, on December 14, 2004, a consent order was entered specifically providing that the County was entitled to condemn the subject property. By virtue of the consent order's terms, the Appellees explicitly consented that the condemnation should "be sustained as a lawful exercise of the power of eminent domain." The consent order further stated that the County was entitled to fee simple ownership of the property and contemplated that additional proceedings would take place regarding the compensation due to the Appellees. In relevant part, although the order provided that the clerk should disburse the $39,500 sum that the County had deposited, it noted that such disbursement was made "without prejudice to any of the parties . . . as to compensation."

Although the County subsequently nonsuited the case, we reversed on appeal. We noted that because the December 2004 consent order gave the County ownership of the property and the legal right of possession, the only remaining issue was one of compensation. *Crews*, 315 S.W.3d at 482. Under such circumstances, we held that a voluntary dismissal was precluded. *Id.* We accordingly reversed the trial court's decision to permit a nonsuit and remanded the matter for further proceedings. *Id.* Given the posture of the case, the only remaining issue for determination on remand was the amount of compensation owed to the Appellees.

Although trial proceedings were eventually commenced to determine the amount of compensation due as a result of the taking, these proceedings were never pursued to finality. Instead, a dismissal of the case was granted upon the oral motion of the Appellees' counsel and proceedings were held to determine the damages allegedly owed to the Appellees pursuant to Tennessee Code Annotated section 29-17-912. This was error. As we have noted, the Appellees did not initially object to the County's right to condemn the subject parcel. Indeed, the entry of the December 2004 consent order evidenced their consent to the County's legal right to appropriate the property. They consented not only to the County's right to own the property in fee simple, but also to the County's right to acquire the property by the power of eminent domain. This manifested consent foreclosed the need to conduct any further proceedings in the condemnation action, save those related to compensation. The merit of the County's desire to condemn the property was simply not a question for further consideration. The issue had already been conclusively decided by the consent order. Again, when we remanded the case after the first appeal, only the issue of compensation remained.

The trial court's decision to dismiss the condemnation case thus disregards the Appellees' prior consent to the condemnation and runs afoul of the law of the case. "The phrase 'law of the case' refers to a legal doctrine which generally prohibits reconsideration of

7

issues that have already been decided in a prior appeal of the same case." *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998) (citation omitted). Although the law of the case doctrine is not a constitutional mandate, "it is a longstanding discretionary rule of judicial practice which is based on the common sense recognition that issues previously litigated and decided by a court of competent jurisdiction ordinarily need not be revisited." *Id.* (citation omitted). "[U]nder the law of the case doctrine, an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal." *Id.* (citations omitted). The doctrine applies not only to those issues that were actually before the appellate court, but it also applies to those issues that were necessarily decided by implication. *Id.* (citation omitted). Application of the doctrine promotes efficiency in the judicial process and "assures the obedience of lower courts to the decisions of appellate courts." *Id.* (citations omitted).

Although the first appeal in this case dealt directly with the propriety of the trial court's decision to allow the County to voluntarily dismiss its condemnation action, our resolution of that question implicitly affirmed that the County was entitled to condemn the subject property. Indeed, our reversal of the County's nonsuit was predicated on the fact that a consent order had already been entered granting the County ownership and possession of the parcel at issue. *Crews*, 315 S.W.3d at 482. We recognized that the prayed-for condemnation had been consented to among the parties and only the issue of compensation remained to be decided. Because the County's entitlement to condemnation was already the established law of the case, the trial court erred in dismissing the condemnation case and transferring title to the property back to the Appellees. That decision is accordingly reversed, and title to the property is hereby restored to the County.

### Denial of the County's Summary Judgment Motion

In addition to challenging the dismissal of its condemnation action, the County contends that the denial of its motion for summary judgment was in error. As explained previously, the County's motion for summary judgment sought the entry of judgment on the alternative bases for relief that the County had pled in its second amended petition. In relevant part, the motion asserted that the Appellees had forfeited any right to claim an interest in the property pursuant to Tennessee Code Annotated section 28-2-110. It also sought a declaration that the County owned the property as a result of adverse possession.

In its brief, the County generally argues that it is entitled to the property as a result of its adverse possession and the bar imposed by Tennessee Code Annotated section 28-2-110. It also challenges the legal sufficiency of the trial court's July 15, 2011 order and specifically asserts that the order fails to comply with Rule 56.04 of the Tennessee Rules of Civil

Procedure. As the County notes, that rule provides that the order entered on a summary judgment motion "shall state the legal grounds upon which the court denies or grants the motion." Tenn. R. Civ. P. 56.04.

Having reviewed the order denying the County's motion for summary judgment, we agree that it fails to contain any detailed explanation as to why the County's alternative requests for relief cannot be granted. After reciting the bases on which the County had pursued its motion, the order simply concludes that the motion "should be denied." Although there is technically an absence of compliance with Rule 56.04, the absence of stated grounds in the order does not significantly hamper our review of the trial court's decision. *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 314 (Tenn. 2014) (expressing approval, under proper circumstances, of this Court's decision to not vacate orders that are deficient under Rule 56.04). As previously noted, the basis of the trial court's ruling can be readily ascertained from a filed transcript of the trial judge's summary judgment ruling from the bench. A portion of that ruling is reproduced below:

> [T]he Court is of the considered opinion that all of the issues raised by [the motion for summary judgment] are in fact moot, and they were rendered moot first by the filing initially of this petition [for] condemnation and then by the entry of the order in 2004 that confirmed the taking. The only remaining issue for trial is the fair market value of the taking. We will proceed to trial on that issue alone.

As is evident from its oral ruling, the trial court did not perceive the issues concerning adverse possession and Tennessee Code Annotated section 28-2-110 to be legitimate issues in the case. Its ruling indicates that the amount of compensation owed to the Appellees was the only legitimate issue for trial following the remand. We agree. Although the County's second amended petition filed following our remand of this case asserted rights to the property pursuant to an adverse possession theory and under Tennessee Code Annotated section 28-2-110, we fail to see how these alternative bases for relief could be properly considered. As has been stressed throughout both this Opinion and our Opinion in the first appeal of this case, the December 14, 2004 consent order gave the County ownership and legal possession of the property at issue. The issue of condemnation was decided; the parties expressly consented that the County was entitled to ownership of the property through the exercise of its eminent domain powers. Given such a posture of the case, we fail to comprehend how the County could thereafter seek to advance legal theories under which the Appellees would be denied compensation. Although our liberal rules of pleading certainly permit the assertion of alternative claims for relief, the doctrine of election of remedies works to estop parties from pursuing inconsistent remedies. *See generally Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901 (Tenn. 1999). By agreeing to the consent order of condemnation, the County agreed to obtain ownership of the subject property through the power of eminent

9

domain.  When property is obtained under such circumstances, the law demands that fair compensation be paid to the landowners from whom the property was taken.  *See Zirkle v. City of Kingston*, 396 S.W.2d 356, 359-60 (Tenn. 1965) (noting that when the "high power" of eminent domain is exercised "the owners of the property so taken shall receive just compensation therefor as required by both the Federal and State Constitutions").

The County did not attempt to assert an adverse possession claim until after it had already obtained legal ownership of the property pursuant to the consent order of condemnation.  Having already elected to obtain ownership of the property pursuant to the power of eminent domain, leaving only the issue of compensation to be decided, we fail to see how the County's alternative bases for relief could be injected into the case.  The trial court rightly denied the County's request for judgment on these alternative bases.

### Assessment of Damages under Tenn. Code Ann. § 29-17-912; Appellees' Request for Appellate Attorney's Fees

The remaining issues raised by the County concern perceived errors committed by the trial court in its assessment of damages to the Appellees under Tennessee Code Annotated section 29-17-912.  As previously addressed, that statute provides that if the final judgment prevents the acquiring party from condemning the property, the owner of the property shall be awarded attorney's fees, appraisal and engineering fees, and such other expenses incurred because of the condemnation proceedings.  Tenn. Code Ann. § 29-17-912(b) (2012).  Given our disposition herein, any issues concerning the trial court's assessment of damages under this statute are necessarily pretermitted.  Because we have concluded that the trial court erred in dismissing the County's condemnation case, the order of dismissal must be vacated, as well as all subsequent orders[4] that assessed damages pursuant to Tennessee Code Annotated section 29-17-912[5].  Although the Appellees are entitled to compensation as a result of the County's taking, they are not entitled to damages that flow from section 29-17-912.

---

[4] Specifically, the following orders are vacated in addition to the July 2012 "Order Granting Defendants' Motion to Dismiss": (1) the July 24, 2013 "Order on Post-Trial Jury Verdict on Defendant Landowners' Rental Loss"; (2) the September 18, 2014 "Order Denying Plaintiff's Motion and Renewed Objection to Defendants' Attorney Fee Claim & Order Denying Plaintiff's Motion for Application of Credits Against Defendants' Attorney Fees Claim and Jury Verdict for Loss Rents"; and (3) the September 18, 2014 "Final Judgment."

[5] With respect to the "rental loss" damages that were awarded pursuant to the trial court's July 24, 2013 order, we note that the briefs of the parties dispute how these damages should be characterized.  The County submits that section 29-17-912 does not provide a basis for such damages and argues that the trial court's award was thus in error.  We would agree that the text of section 29-17-912 does not appear to provide for such a measure of damages.  The Appellees argue, however, that the "rental loss" damages are properly considered as an element of compensation owed as a result of the County's temporary taking.  They argue that the damages were awarded as a result of the authority in Article I, Section 21 of the Tennessee Constitution.  That constitutional

Accordingly, we must reject the Appellees' request to recover attorney's fees incurred on the appeals of this matter. Although it is true that the obligations to pay attorney's fees and expenses under section 29-17-912 extend to fees incurred in the appellate proceedings, s*ee Knox Cnty. ex rel. Schumpert v. Union Livestock Yard, Inc.*, 59 S.W.3d 158, 167 (Tenn. Ct. App. 2001),[6] our determination that the County is entitled to the property forecloses such relief. Again, section 29-17-912 does not allow a landowner to recover fees and expenses when the acquiring party is allowed to condemn the subject property. Per its terms, section 29-17-912 permits an award to the landowner when (1) "[t]he final judgment is that the acquiring party cannot acquire the real property by condemnation" or (2) "[t]he proceeding is abandoned by the acquiring party." Tenn. Code Ann. § 29-17-912(b) (2012).

### *Proceedings on Remand*

Although we have vacated those orders that awarded the Appellees damages following the trial court's order of dismissal, this does not mean that no relief is available to the Appellees. Indeed, by virtue of the December 2004 consent order, a full taking of the property has occurred. We have restored title to the property back to the County, leaving the

---

provision provides that "no man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor." Tenn. Const. art. 1, § 21. Having reviewed the record, we would agree with the Appellees that the "rental loss" damages appear to have been awarded on this basis. After the trial court dismissed the County's condemnation case, the Appellees filed a statement of costs and damages they believed were owed by the County as a result of the dismissal. In addition to containing a statement of damages that they believed they were owed under section 29-17-912, the Appellees requested to recover the fair rental value of the property from the date of the order of condemnation to the date that the condemnation claim was dismissed. As authority for such relief, the Appellees cited Article I, Section 21 of the Tennessee Constitution. In the July 24, 2013 order awarding "rental loss" damages, the trial court acknowledged that the Appellees' post-dismissal claims had included a claim for loss rents pursuant to "the Constitution of the State of Tennessee." Although the record thus seems to support the Appellees' contention that the "rental loss" damages were awarded as a constitutional concern rather than pursuant to section 29-17-912, these damages must be vacated alongside those awarded specifically in accordance with the statute. As explained by the Appellees, the "rental loss" component of damages was awarded to provide compensation from December 2004 to July 2012. Given our determination that dismissal of the condemnation case was in error, this measure of damages cannot stand. This Opinion restores title to the property to the County, and we must remand for an assessment of damages resulting from the taking. We fail to discern how the Appellees would be entitled to "rental loss" damages for a period of time during which we have determined that the County properly had legal title to the property. Given our disposition herein, there was no temporary taking during the 2004-2012 time period, as a full taking had already resulted from the December 2004 consent order.

[6] Although the *Union Livestock* decision specifically reviewed the availability of appellate attorney's fees under Tennessee Code Annotated section 29-17-812, that section of the Code has since been transferred to section 29-17-912.

case in virtually the same position that it was in when we remanded the matter following the first appeal. Simply put, there must be a determination of what compensation is owed to the Appellees as a result of the taking. Our Constitution demands that the Appellees receive just compensation, and we hereby remand for a determination of the amount that is owed to them.[7]

## Conclusion

Because the trial court erred in dismissing the County's condemnation case, we hereby vacate the order of dismissal, as well as all subsequent orders adjudicating those issues that the order of dismissal had reserved. Title to the property is transferred back to Shelby County, and we remand for further proceedings to determine the amount of compensation owed to the Appellees as a result of the condemnation. The costs of this appeal are assessed one-half to Shelby County, and one-half to the Appellees, for all of which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE

---

[7] We note that the County should receive a credit for $43,300 against the amount of compensation that is determined to be owed to the Appellees on remand. Prior to the first appeal of this matter, in connection with its allowance of a nonsuit, the trial court assessed costs and fees in this amount against the County pursuant to Tennessee Code Annotated section 29-17-912. Our reversal of the nonsuit in the first appeal prevented the County from abandoning the condemnation proceeding and thus prevented an award of damages from properly being made under section 29-17-912. The disbursed $39,500 sum that the Appellees received pursuant to the consent order of condemnation was credited against the assessed $43,300 amount, and both parties acknowledge in their briefs that the County has since paid the remaining $3,800.